UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JUAN RONALDO OXLAJ GONZALEZ,
Petitioner,

v.

MARKWAYNE MULLIN, et al.,
Respondents.

Case No.: 26-CV-4432 JAO (JLB)

**ORDER GRANTING WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Petitioner Juan Ronaldo Oxlaj Gonzalez's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Also before the Court is Respondents Markwayne Mullin's (Secretary of the U.S. Department of Homeland Security), Rodeny S. Scott's (Commissioner of United States Customs and Border Protection), Jesus Rocha's (Acting Director of Immigration and Customs Enforcement), and Christopher LaRose's (Warden of the Otay Mesa Detention Center) Response to Petition, as well as Petitioner's Traverse. ECF Nos. 4, 5.

For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus on due process grounds.

**BACKGROUND**

Petitioner, a citizen of Guatemala, entered the United States around April 2019 as a minor with his mother and sister seeking humanitarian protection. *See* ECF No. 1 at 14.

On about April 18, 2019, officers of the Department of Homeland Security apprehended and initiated removal proceedings against Petitioner and his family after they entered the United States. *See id.* He was served with a Notice to Appear, charging him removable under the Immigration and Nationality Act, which was Respondents' opportunity to determine whether Petitioner's continued detention was necessary or whether the Government had a legitimate regulatory interest that could be adequately protected through less restrictive means. *See id.* After considering Petitioner's circumstances, the Government determined that continued detention was unnecessary and he was released from immigration custody. *See id.* at 15.

Since then, he has openly resided and worked in the United States, and remained known to federal immigration authorities. *See id.* at 16. He has also established substantial ties within his community and lived without any allegation that he posed a danger to the community or was a flight risk. *See id.* As removal proceedings continued before the Immigration Court against Petitioner in the ordinary course, the Department of Homeland Security ultimately moved to dismiss the pending removal proceedings without prejudice. *See id.* at 20. After the dismissal, Respondents neither revoked Petitioner's release nor alleged that he had violated any previously imposed conditions. *See id.*

After more than six years after Petitioner's release from custody, on August 1, 2026, immigration authorities re-detained him at a military base after getting lost while looking for a gas station. *See id.* at 22. Petitioner was not informed why he was detained or what change in circumstances justified his re-detention. *See id.* He has since been transferred to Immigration and Customs Enforcement ("ICE") custody at the Otay Mesa Detention Center in San Diego, California. *See id.* Petitioner argues that he is entitled to release because the government violated his due process rights by re-detaining him without notice or an opportunity to be heard. *Id.* at 39.

Respondents recognize that Petitioner is not subject to mandatory detention under 8 U.S.C § 1225 but is still subject to detention under 8 U.S.C. § 1226(a). *See* ECF No. 4

at 2 (citing *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, --- F.4th --- (9th Cir. July 30, 2026)). Thus, Respondents do "not oppose the petition and defers to the Court on the appropriate relief." *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that abrupt re-detention without justification or consideration of his individualized circumstances violates the Due Process Clause. ECF No. 1 at 39. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*,

494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Id.* (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Upon arrival, Petitioner was detained as a minor and released after a determination that detention was unnecessary. *See* ECF No. 1 at 28. After more than six years of being able to reside at liberty in the United States without incident, Petitioner was re-detained. *See id.* at 29–30. Within those six years, Petitioner established substantial community ties, pursued immigration relief, attended school, and has not been accused of posing a danger to the community or being a flight risk. *See id.* at 17. Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. 2025) (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's re-detention of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody after he was originally released, and especially after his removal proceedings were dismissed without prejudice. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining in his community and continuing the process of seeking asylum. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high because Petitioner was re-detained without providing him a reason or giving him an opportunity to be heard. *See* ECF No. 1 at 22–23. Respondents have not indicated that he should remain in custody based on evidence that he poses a danger to the community and is a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has resided in the United States without

incident and is working towards asylum status. *See* ECF No. 1 at 10. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk[.]" *Id.*

"Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See id.* at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* ECF No. 5.

Therefore, because Respondents re-detained Petitioner in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[1]

---

[1] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA based on similar grounds. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 807

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) on due process grounds, and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions preexisting prior to his re-detention. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025); *Isaev, v. LaRose, et al.*, 2026 WL 1162758, at *3 (S.D. Cal. Apr. 29, 2026). The Parties are **ORDERED** to file a Joint Status Report by August 25, 2026, confirming that Petitioner has been released.[2]

**IT IS SO ORDERED.**

Dated: August 18, 2026

Jill A. Otake
United States District Judge

F. Supp. 3d at 1156 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.").

[2] Petitioner requested attorney's fees, related expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* ECF No. 1 at 10. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order. See 28 U.S.C. § 2412(d)(1)(B).